The next case today is Maria S. Diaz-Baez et al. versus Julio Alicea-Vasallo et al. Appeal number 19-1474. Attorney Valenzuela, please introduce yourself for the record to proceed with your argument. Good morning to all the members of the court. Good morning on our judges. This is attorney Jose Enrico Valenzuela Alvarado representing appellant's plaintiffs in this case. May I proceed? Please do. Yes. This case deals with political discrimination and it has two different areas that I will address here. First, the res judicata collateral estoppel issue and second, the unhealthy defense. As to the first, we must first introduce the procedural background of this case as to the dates that finally render a decision of the Puerto Rico Supreme Court that the district court concluded that that decision precludes all the entire case through the summary judgment and that's why we're here. So basically, this case was first filed on June 22, 2010. Thereafter, in November 15, 2012, there was a denial of plaintiff appellant's partial summary judgment and in its denial, the court recognized that this case has a lot of controversy or issues of fact and that it was a political discrimination case. So thereafter, in April 7, 2014, the court denied the appellee's defendant's motion for summary judgment, I mean motion to force stay of proceedings because they asked the district court at that time in 2014 to stay the proceedings pending the decisions that were appealed regarding as to the hearing or administrative cases which dealt with the time computation for the dismissal. So at that time, that denial of stay was granted by the court, I mean the court denied the petition of stay and thereafter, on July 23, 2015, the court to respond, they asked for the parties to show cause why this case should not be stayed. Mr. Valenzuela, I think you can assume we're reasonably familiar with the travel of this case, but what interests me is the other side is that the board had the only authority to make the final layoff decision and approve the layoff and that therefore, the agency itself cannot be liable. I know you dispute that, but what I couldn't tell from your brief was if we should agree that the board was the policy decision and the board made the decision here that's being challenged and therefore, you cannot sue the agency. Is there anything left of your case? Yes, Your Honor, precisely the case of Oppenheimer-Mendez versus Acevedo, which is 388 federal supplement 326 and was affirmed by the person with court, it recognized... This case, is there anything left of your lawsuit if we make that finding? No, I understand now your question, Your Honor. Actually, the case has been completely dismissed by the district court. So, if I'm following your brief correctly, you need to convince us that it's still an open issue as to whether the board was the final decision maker. Yes, that's correct, Your Honor, because the case that I just quoted and that was affirmed by the first circuit court, which is the Oppenheimer case, it clearly deals with that issue as to who's denominating authority and recognizes that it's the executive director, not the board. And also, precisely the... So, the appellate court decision of Umberto Mueller versus AACA, I mean, that decision was not appealed to the Supreme Court, which means that that is the highest level court in Puerto Rico that has said, no, it's the board. Yes, that's one of the arguments that were... Why aren't we bound by that? Excuse me? Why aren't we bound by that? That case dealt with most of these litigants, so it's not as if there were other people not involved. The group of the litigants here brought that Umberto case and lost. Yes, because that case dealt with administrative proceedings as to the computation of the time when the time was approved by the board and executed by the executive director. So, that issue was an administrative case... Five minutes remaining, five minutes. ...dealt exactly or specifically as to the time, not as to the political discrimination arguments, which that's why we're here. And also, if we try to be some kind of... The second part of the argument, it has been included in unhealthy defense on jurisdictional grounds, and then why can't we justify or explain that we have been litigating this case since 2010, and we're in 2021, and the case was dismissed on unhealthy grounds on jurisdictional issues that were supposed to be dealt in June 22, 2010, when the case was dismissed. I explain that because precisely the court, the district court rejected that argument when they issued a denial of the state, and precisely because they understood at all time, also, that this case dealt with political discrimination. And even in the opposition for summary judgment, to defeat those unhealthy defense, we even submitted seven depositions or transcripts in summary, which are on the briefs of direct specific discriminatory intent and facts directly from Alicia Abasayo against these seven individuals, which is very hard to believe that a state court can make the fair court to be preempted in the section 1983 case. Precisely, the section 93 case was created to avoid all these procedural difficulties and also to entertain the case faster when it has to do with the due process and First Amendment claims. So it is impossible to believe that a Supreme Court decided a case on the merits based only on a computation of time to conclude that all the other issues related to discrimination has been already also dismissed. So that's why we're here in general terms. And any questions that your honors might have, I'm here to answer all of them. Okay, thank you. Are there any questions from my co-panelists? No. Thank you very much. Thank you, your honor. Attorney Valenzuela, at this time, you can mute your audio and your video. Yes. And attorney Sanchez-Pagan, you can unmute your audio and video. You have a seven-minute argument and you may begin by introducing yourself. Yes, good morning, your honors. Afternoon for us. My name is Adrian Sanchez. I represent ACCA, which is the Automobile Accident Compensation Administration. I'd like to address real quick and just maybe clear what I consider to be misconstruction, so what actually happened. The Mueller case, which Judge Thompson asked about, the issue in the Mueller case was who took the adverse employment action against these plaintiffs' appellants. That was the issue in the Mueller case. And as your honor Cayeta mentioned, you guys are, sorry, your honors are familiar with the procedure of history. What happened is- That's okay, Mr. Sanchez. We've been called guys all of our life, regardless of gender. Well, I mean, but I apologize- You will henceforth refer to us as judges, okay? Yes, yes, Judge Cayeta. We understood that as the generic, you guys. Yes, I did not attach anything with regards to gender in that expression. But anyway, putting that aside, what happened in this case is that as soon as this layoff plan was implemented or started to be implemented, actually the challenges in the state court began right when the rumors that it would begin to be implemented began. And what happens is that almost all of the appellants challenged many aspects of this plan in state court. And also, this other group of 62 plaintiffs filed the 1983 claim in federal court. But while the 1983 federal claim was being litigated, so were the state claims. And what happened was, the Mueller case was actually brought by 27 of the actual appellants in this case. And they actually won that case. Their argument was that the body or entity or individual that took the adverse employment action against them, meaning approving the layoff plan, the date, the cutoff date, and the nine-year seniority, as well as the list of those who would be terminated, was the board of director, not the executive director. And actually they won. The court of appeals ruled in their favor and said it was board of directors who took the adverse employment action. Now, why was that issue important? Why was that brought? Because after they were notified of the intent of termination, they had a right to appeal to it only to review in the acts of the executive director. So it was important to find out who took the adverse employment action. Because if it was the executive director who took the employment action, then the administrative judge would have jurisdiction to revise the acts of terminating these employees. But the court of appeals said no, it was the board of directors. And actually, again, it gave appellants the reason. Appellants were the ones who were sustaining this position. Now today, in this case, when the district court, based on that ruling, which became final and firm, nobody appealed. But also what is interesting is that through the administrative appeals process, some of the appellants raised the issue again. And in a separate case, it went to the Supreme Court of Puerto Rico. And the Supreme Court said, this issue has already been resolved by the case in Mueller. And it was the board of directors who took the adverse employment action. So when we plug in that fact, that fact in this 1983 case, which requires the plaintiff to prove that the individual that took the adverse employment action did so for political reasons. But what happens in this case is that when you try to plug in that it was the board of directors who took the adverse employment action, what happens is that they're not sued in this case. They're not a defendant in this case. There's no allegation in the complaint that the board of directors or any of their members knew what the political affiliation of the plaintiffs were. And there's no allegation that the members of the board were different political affiliations. And there's no allegation that the reason or the substantial motivating factor behind the board taking that adverse employment action was political. And I will add, the district court not just ruled based on the Mueller case. The district court had before it the entire record. The district court had financial statements of ACCA. The district court had years of minutes from hearings from the board. And in those minutes, independently, regardless of what the Mueller case ruled, just by reading them, you know that ACCA had been since at least 2006 considering a layoff plan. And 2006 was the other administration, was a PDP administration, was in the NPP administration. So the bottom line is, yes, the ruling in Mueller and the Supreme Court is controlling as to an issue. It is not controlling as to the 1983 claim, but that's not what the district court said. The district court said it is controlling as to an issue that is material to the 1983 case, namely who took the adverse employment inaction. And then second, it didn't just stop there. If you look at the material facts, the district court goes over those minutes, goes over the financial records, and nobody has ever been able to dispute that ACCA was in a dire financial situation. Whether they should have picked 13 years and fired everybody that had been hired in the last 13 years or nine years, that was a decision the board made. Yes, the executive director did in gauge or organize this plan, but it did so under the instructions of the board. And those minutes reflect that. So it's not just the Mueller case, not just issue preclusion that moved the district court. It was actually the independent record and also the lack of concrete allegations on the part of the plaintiffs, number one, regarding issues with political affiliation with the board. And even so, I'd oppose all the plaintiffs. Only two or three could say... Time has expired. Thank you, counsel. You're welcome, your honor. At this time, attorney Sanchez, please mute your audio and video. Attorney Mundere, you can begin your three-minute argument by introducing yourself on the record. Thank you. Yes, may I please record my name is Francisco J. Mundere Rodriguez on behalf of Julio Alicia Abasayo. Your honor, this case is quite simple, and I think that each and every one of you understands what's at issue in this case. It's who made the final decision. Who was the final decision maker? And that was the board of directors. That is not only something that was resolved by the Court of Appeals of Puerto Rico. Mr. Mundere, I don't think that's the issue. I think the issue is whether collateral estoppel and res judicata applies to that determination. I understand that it does, your honor. There is issue preclusion here, but there is also evidence in the record, your honor, that unequivocally tends to indicate that the final decision maker was the board of directors and not Mr. Julio Alicia, and plaintiffs have not been able to refute that. Well, in fact, your opponent conceded that his case disappears if we affirm the collateral estoppel and res judicata findings of the district court who looked at what Puerto Rican courts have done, both the appeals court and the Puerto Rican Supreme Court. So, does that leave you with anything else to say? No, your honor. Okay, well, thank you very much. It has been my pleasure. Thank you. Thank you, counsel. That concludes the argument in this case. Attorney Valenzuela, attorney Sanchez, and attorney Amundaray, you should disconnect from the hearing at this time.